UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANA-FARBER CANCER INSTITUTE, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRISTOL-MYERS SQUIBB, CO., <br> E. R. SQUIBB & SONS, L.L.C., AND <br> ONO PHARMACEUTICAL CO., LTD. <br><br> Defendants. | No. 1:19-cv-11380-PBS <br><br> **PUBLIC REDACTED VERSION** <br><br> **MOTION TO SEAL FILED <br> MAY 3, 2021 (DKT. 121)**\* |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING
THE FEDERAL STANDARDS FOR HOLDING LICENSING CONDUCT
TO BE ANTICOMPETITIVE**

---

\* Defendants will modify this public version, if necessary, to be consistent with the Court's forthcoming ruling on Dkt. 121.

I.    INTRODUCTION

Defendants Bristol-Myers Squibb Co., E. R. Squibb & Sons LLC, and Ono Pharmaceutical Co., Ltd. (collectively "Defendants") respectfully submit this supplemental brief demonstrating that Plaintiff Dana-Farber Cancer Institute's ("Dana-Farber") Amended and Supplemental Complaint fails to allege facts that would show Defendants have engaged in licensing practices that violate federal antitrust law. That failure is relevant to Defendants' pending motion to dismiss. Dana-Farber's various claims are predicated on Defendants' licensing activities before Dana-Farber was joined as a co-owner of certain patents. But Dana-Farber faces a problem: Section 262 of the Patent Act expressly authorizes every patent co-owner to license without the permission of other co-owners. And for this reason, Dana-Farber's state law unjust enrichment claims are precisely the type of state law claims that the Federal Circuit has held are preempted by federal patent law. *See Tavory v. NTP, Inc.*, 297 F. App'x 976, 982 (Fed. Cir. 2008) (nonprecedential).

At the motion-to-dismiss hearing, Dana-Farber sought to overcome Section 262's preemptive effect by arguing that Section 262 did not provide an unfettered right to license, and that it did not give Defendants the right to license in what Dana-Farber has erroneously characterized as an "anticompetitive" manner. But there are only two recognized exceptions to Section 262's preemption: (1) where there is breach of an agreement between the coinventors; and (2) where the state-law claims stem from misuse of confidential information—particularly where that misuse requires complete substitution of the true inventor group for another group of incorrectly-named inventors. *See* Dkt. 91 at 19-22; Dkt. 105 at 11 (discussing *QLT* and *American Cyanamid* cases). Because Dana-Farber's claims do not fall within either of these narrow recognized exceptions to preemption, Dana-Farber is effectively arguing for a new "anticompetitive" exception to preemption.

For this new theory to have any chance at overcoming the preemptive effect of the Patent Act's Section 262, Dana-Farber would need to show that *federal* competition law proscribes the licensing activities that Dana-Farber alleges in its complaint, because no state competition law can supersede the licensing grant of Section 262.  As described below, Dana-Farber has not and cannot make any such showing.  That failure means that Dana-Farber's claims are preempted by the federal Patent Act, and the Court should dismiss the Amended and Supplemental Complaint.

## II.  DANA-FARBER'S COMPLAINT DOES NOT ALLEGE LICENSING ACTIVITIES THAT WOULD BE ANTICOMPETITIVE UNDER FEDERAL LAW

As Defendants explained in the briefing and at the April 26 hearing, Dana-Farber's state law claims challenge conduct that is permitted under the Patent Act (*see* 35 U.S.C. §§ 256, 262)—a co-inventor's licensing duly-owned patents.  *See* Dkt. 91 at 12-22; Dkt. 105 at 8-12. And Dana-Farber's claims do not fall within the narrow exceptions to preemption of state law causes of action recognized by the First Circuit and the Federal Circuit in the *QLT* and *American Cyanamid* cases.

Dana-Farber nonetheless seeks to pursue state law claims based on Defendants' supposed or "anticompetitive conduct" regarding patent licensing and litigation.  Dkt. 97 at 17-18; Dkt. 82, DFCI's Amended and Supplemental Complaint ("FAC"), ¶¶ 4, 85, 121, 135.  At bottom, Dana-Farber is arguing for a new exception to the preemptive effect of Section 262—different from the *QLT* and *American Cyanamid* exceptions—based on anticompetitive licensing.

But simply labeling conduct as "anticompetitive" does not overcome preemption—for Dana-Farber's argument to be legally viable, Dana-Farber would need to show that *federal* competition law principles proscribe the conduct at issue.  To be clear, Dana-Farber does not cite any case showing that *Massachusetts* unfair competition law (Chapter 93A) proscribes licensing activities like those alleged here—Dana-Farber cites only general 93A principles, not any

specific cases addressing the application of 93A to licensing. Even if such authority existed, it would not suffice to overcome preemption—Dana-Farber needs to show *federal* authority imposing antitrust-law restraints on the *federal* grant of licensing authority provided by Section 262.

But Dana-Farber has not alleged any conduct by Defendants that would violate federal competition law. In the absence of any such alleged violation, the Defendants' conduct falls within the federal grant of licensing authority under Section 262—and Dana-Farber's state law claims attacking that same conduct are preempted. *See Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) (a patent co-owner "may not be prohibited from exploiting [their] rights in the patent, including the right to grant licenses to third parties on whatever conditions the co-owner chooses.").

Dana-Farber attempts to allege three types of purportedly anticompetitive conduct:

- **Exclusive Dealing**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FAC ¶¶ 72, 81, 93, 119, 121.

- **Tying or Bundling**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FAC ¶¶ 108, 123.

- **Sham Patent Assertions or Litigation**: Defendants "falsely held themselves out as sole owners of the patent" when asserting the Inventorship Patents against third parties (FAC ¶¶ 70, 76, 91, 118), and engaging in "bad faith" litigation conduct during the prior inventorship suit involving the parties. FAC ¶ 119.

As a threshold matter, Dana-Farber alleges that Defendants have engaged in anticompetitive conduct by *licensing certain competitors*. Defendants did not have to license

anyone, and yet chose to do so—thereby *creating competition* and *expanding* patient access to the PD-1 and PD-L1 technology.

But even setting this to the side, none of Dana-Farber's allegations support a claim under federal antitrust law.[1] In the interest of brevity, we do not catalogue every legal deficiency here, just the most fundamental ones—which are sufficient to demonstrate that Dana-Farber cannot show any violation of federal antitrust law, and thus cannot overcome Section 262's preemptive effect by labeling Defendants' licensing as "anticompetitive."

### A.  Alleged Exclusive Dealing

To plead a claim based on exclusive dealing—i.e., that customers purchase only from the defendant—under Section 1 (illegal restraint of trade) or Section 2 (monopolization) of the Sherman Act, a plaintiff must demonstrate that the exclusive dealing requirement threatens harm to competition in a relevant antitrust market. *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 68 (1st Cir. 2002); *see Sterling Merchandising, Inc. v. Nestle S.A.*, 656 F.3d 112, 123-124 (1st Cir. 2011) (rejecting exclusive dealing claim where there was "no evidence that the challenged exclusivity agreement impair[ed] competition" and stating "'[i]t is not easy to think of a rule of reason analysis that does not depend on showing adverse effects on competition in a properly defined relevant market.'" (quoting *Shop & Stop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 69 (1st Cir. 2004))).

Here, Dana-Farber has failed to allege any relevant antitrust market in which harm to competition has occurred. Dana-Farber cursorily alleges that Defendants have "market power" "in the field of PD-1/PD-L1 intellectual property," FAC ¶ 101, but fails to allege any facts suggesting that "PD-1/PD-L1 intellectual property" constitutes a cognizable antitrust market.

---

[1] Defendants dispute DFCI's allegations as to the underlying facts, but as required on a motion to dismiss, Defendants accept these allegations as true solely for purposes of this motion.

*Gilbuilt Homes, Inc. v. Cont'l Homes of New England, a Div. of Wylain, Inc.*, 667 F.2d 209, 211 (1st Cir. 1981) (affirming dismissal when the plaintiff "failed to plead any facts defining the market"). In particular, the FAC includes no allegations regarding "cross-elasticity of demand" or "reasonable interchangeability" between the Inventorship Patents and other patents. *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 854 (1st Cir. 2016) ("Determining the scope of a product market begins with examining the universe of products that are considered 'reasonably interchangeable by consumers for the same purposes.'"); *Shepherd Intel. Sys., Inc. v. Def. Techs., Inc.*, 702 F. Supp. 365, 369 (D. Mass. 1988) (dismissing Sherman Act claim for failure to define the relevant market "as required."). That the Inventorship Patents cover patented technologies, moreover, provides no basis to infer that Defendants have held market power in a properly defined antitrust market. *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 42 (2006) (holding "tying arrangements involving patented products ... must be supported by proof of power in the relevant market rather than by a mere presumption thereof.").

Moreover, Dana-Farber has failed to allege that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—harmed competition by foreclosing Dana-Farber from competing to license other potential licensees. Indeed, any such notion is squarely contradicted by the FAC, which alleges that there are "numerous" current actual or potential licensees (with no fewer than seven enumerated) and that "[o]there companies are investigating additional PD-1 and PD-L1 therapies covered by one or more of the [Inventorship Patents]." FAC ¶ 106. *See, e.g., Sterling Merchandising*, 656 F.3d at 123-124 (rejecting exclusive dealing claim where plaintiff could sell to substantial portion of market that was not party to exclusive dealing commitments). Moreover, given that Dana-Farber is seeking to license technology—and is not engaged in a

business that implicates significant economies of scale—it defies common sense that alleged exclusive dealing with some licensees could impede Dana-Farber from competing to enter licenses with others. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961) (ultimate question is whether exclusive dealing arrangement "significantly limited" opportunities for competing sellers to "enter into or remain on the market").[2]

### B.  Alleged Tying or Bundling

Dana-Farber alleges that Defendants have "unfairly used their market power" in the Korman Patents or "other patents" and the inventorship patents by "  " FAC ¶ 102.  Those allegations do not support a claim for tying or anticompetitive bundled discounts under federal antitrust law.

The Supreme Court has made clear that tied sales are often procompetitive, *see Independent Ink*, 547 U.S. at 36-38, and Dana-Farber alleges no reason to believe that any alleged tying involving Defendants here harmed competition.  Dana-Farber has failed to allege at least three elements for a tying claim: (1) that there is "actual tie exists between two separate products" (2) that Defendants have "sufficient 'market power' in the tying product to compel acceptance of the tied product" and (3) "anti-competitive effects in the market for the tied

---

[2] Insofar as DFCI might contend that an exclusive dealing arrangement with an individual potential licensee could support a federal antitrust claim, such a claim is foreclosed by federal antitrust law.  *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 441 (3d Cir. 1997) (agreement eliminating customer's own supply alternatives does not support antitrust claim, given absence of harm to competition market wide).

product." *Wells Real Est., Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 814-815 (1st Cir. 1988) (internal citations omitted).

Here, Dana-Farber alleges that ████████████████████████████████ ████████████  But Dana-Farber does not allege any antitrust market(s) purportedly encompassing ███████████████████████ much less that Defendants hold power in such a market(s).  That is dispositive of any tying claim under federal antitrust law.  *See CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 156 (D. Mass. 2003) (dismissing tying claim where plaintiff failed to allege market power); *see Independent Ink*, 547 U.S. at 42.  Moreover, Dana-Farber fails to allege that ████████████████████████████ ████████████████ are in two or more separate product markets.  *See Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984) (a "tying arrangement cannot exist unless two separate product markets have been linked").  Similarly, Dana-Farber fails to allege that Defendants' purported tying resulted in harm in any tied market(s)—████████████████████████ ████████████.  As explained above at 4-5, Dana-Farber fails to allege any cognizable antitrust markets ███████████████████████████, and it alleges no reason to believe that any tying has prevented Dana-Farber from competing to license the Inventorship Patents now that it is a co-owner of those Patents.  That too is fatal to any tying claim under federal law.  *See, e.g., E&L Consulting v. Doman Indus.*, 472 F.3d 23, 32 (2d Cir. 2006) ("Even under notice pleading, an antitrust defendant charged with illegal tying is entitled to some specificity as to the conduct alleged to be coercive, the customers who would have purchased the product elsewhere but for the coercion, the particular products sold as a result of the coercion, the anticompetitive effects in a specified market, and the effect on the business of the plaintiff").

Insofar as Dana-Farber seeks relief based on allegations that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Dana-Farber has failed to allege facts supporting a federal antitrust claim. Most courts have applied the "discount attribution" test to these types of antitrust claims: "a plaintiff who challenges a package discount as anticompetitive must prove that, when the full amount of the discounts given by the defendant is allocated to the competitive product or products, the resulting price of the competitive product or products is below the defendant's incremental cost to produce them." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 909 (9th Cir. 2008). Here, the "competitive product" would be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, any such allegation would be implausible—a licensor's incremental cost for a patent license is zero or close to zero.[3] Janusz A. Ordover & Robert D. Willig, *Economist's View: The Department of Justice Draft Guidelines for the Licensing and Acquisition of Intellectual Property*, Antitrust, Spring 1995, at 29, 33 (explaining "that incremental costs of an additional unit of the licensed technology are zero, or near so…"); *see also* Herbert Hovenkamp, Mark D. Janis, Mark A. Lemley, Christopher R. Leslie & Michael A. Carrier, *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law § 21.05* (3rd Edition, 2020 Supp.) (explaining that in licensing "when

---

[3] The Third Circuit has applied a more qualitative standard to antitrust claims based on bundled discounts, asking whether "when offered by a monopolist they may foreclose portions of the market to a potential competitor who does not manufacture an equally diverse group of products and who therefore cannot make a comparable offer." *LePage's Inc. v. 3M*, 324 F.3d 141, 155 (3d Cir. 2003). Even if this Court were to apply that standard (we are unaware of the First Circuit adopting a standard for a bundling claim), DFCI has not alleged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have foreclosed it from competing to license the Inventorship Patents.

incremental cost is zero, judicially enforced unbundling places the court in the indefensible position of having to regulate prices.").

Accordingly, Dana-Farber has not stated a claim for tying or bundling under federal antitrust law.

### C. Alleged Sham Patent Assertions and Litigation

Finally, Defendants allege that Defendants have "falsely held themselves out as sole owners of the patents" in asserting Inventorship Patents against infringers and engaged in "bad faith, obstructionist litigation tactics" during the inventorship suit. FAC ¶¶ 70, 76 119, 131, 135. Insofar as allegations of these type could ever support a federal antitrust claim it would seemingly be for monopolizing a market(s) for licensing the Inventorship Patents through sham patent assertions or litigation. Dana-Farber would need to allege that Defendants have monopoly power in a relevant antitrust market and acquired or maintained that power though illegal exclusionary conduct. *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). As shown above, Dana-Farber has failed to allege a cognizable antitrust market that encompasses licenses to the Inventorship Patents. That is dispositive of any federal monopolization claim. *See, e.g.*, *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 65 (D. Mass. 2020) (dismissing a monopolization claim for failure to allege monopoly power in a cognizable antitrust market).

But Dana-Farber has also failed to allege facts that could defeat *Noerr-Pennington* immunity for patent assertions or litigation. To overcome that immunity for a suit "to enforce an intellectual property right," a plaintiff must allege that the litigation was both (i) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and (ii) "subjectively baseless," in that it constitutes "'an attempt to interfere *directly* with the business relationship of a competitor'" through the 'use of the government *process*—as opposed

- 9 -

to the *outcome* of that process—as an anticompetitive weapon." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharm. Corp.*, 902 F.3d. 1, 13 (1st Cir. 2018) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (internal quotations omitted)); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *12 (D. Mass. Sept. 16, 2015) ("a citizen petition [to the FDA] is protected unless it is objectively baseless and subjectively motivated by a desire to interfere directly with the business relationships of a competitor through the use of governmental process.").

Here, Dana-Farber alleges that Defendants falsely claimed that they were the sole owners of the Inventorship Patents, but Dana-Farber does not allege any facts suggesting why that claim was untrue when made—let alone why the claim was objectively and subjectively baseless, as is necessary to show a "sham" assertion. Indeed, until Freeman and Wood were added as inventors, Defendants *were* the sole owners of the Inventorship Patents. And, as this Court recognized at the hearing on April 26, the inventorship case was "a good-faith dispute between/among some very brilliant men," Hr'g Tr. at 59:17-18. Dana-Farber's allegations do not state a Section 2 claim for sham patent assertion or litigation.

### III. CONCLUSION

For the foregoing reasons, Dana-Farber has failed to allege facts that show any violation of federal antitrust law, and thus Dana-Farber cannot overcome preemption by characterizing Defendants' conduct as "anticompetitive."

Respectfully submitted,

Dated:  May 5, 2021

*/s/ Felicia H. Ellsworth*
Joseph J. Mueller (BBO #647567)
Felicia H. Ellsworth (BBO #665232)
Jonathan A. Cox (BBO # 687810)
Julia M. Prochazka (BBO # 703120)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
joseph.mueller@wilmerhale.com
felicia.ellsworth@wilmerhale.com
jonathan.cox@wilmerhale.com
julia.prochazka@wilmerhale.com

Thomas G. Sprankling (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Fax: (650) 858-6100
thomas.sprankling@wilmerhale.com

Dianne B. Elderkin (*pro hac vice*)
Steven D. Maslowski (*pro hac vice*)
Matthew A. Pearson (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Tel: (215) 965-1200
Fax: (215) 965-1238
delderkin@akingump.com
smaslowski@akingump.com
mpearson@akingump.com

*Counsel for Bristol-Myers Squibb Co.,
E.R. Squibb & Sons, L.L.C., and
Ono Pharmaceutical Co., Ltd.*

- 12 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May, 2021, the foregoing redacted document was electronically served and filed by use of the court's CM/ECF system.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth
