UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
Dana-Farber Cancer Institute, Inc.,)
                                   )
        Plaintiff,                 )
                                   )    Civil Action
v.                                 )    No. 19-cv-11380-PBS
                                   )
Bristol-Myers Squibb, Co.,         )
E. R. Squibb & Sons, L.L.C., and   )
Ono Pharmaceutical Co., Ltd.,      )
                                   )
        Defendants.                )
_____)
```

## MEMORANDUM AND ORDER

June 22, 2021

Saris, D.J.

Defendants Bristol-Myers Squibb, Co., E.R. Squibb & Sons, L.L.C., and Ono Pharmaceutical Co., Ltd. (collectively, "Defendants") seek to seal all references to allegedly confidential provisions contained in two Settlement and License agreements. (Dkt. 121) The first license agreement, executed on January 1, 2017, settled global litigation between Defendants and Merck & Co., Inc. and its affiliates (the "Merck license"). (Dkt. 41-3) The second sealed agreement, effective as of February 1, 2019, settled global litigation between Defendants and Pfizer Inc., Genetics Institute, LLC, and Wyeth LLC (the "Pfizer license"). (Dkt. 41-4) Defendants maintain that the terms of these agreements contain confidential business

1

information, disclosure of which would put them at a competitive disadvantage in the marketplace. Plaintiff Dana-Farber Cancer Institute, Inc. ("Dana-Farber") counters that there has been no showing as to what language within the agreements constitutes confidential business information or how disclosure would put Defendants at a competitive disadvantage. The Court **DENIES** the motion.

## BACKGROUND

This lawsuit is Round Two in a hard-fought, bare-knuckled litigation over inventorship of patents involving cancer immunotherapy. In Round One, Dana-Farber, a non-profit institution dedicated to cancer research, and Pfizer brought an action against defendants seeking to correct the inventorship of six patents in the field of cancer immunotherapy (the "Honjo-Freeman patents"). Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co., 379 F. Supp. 3d 53, 102 (D. Mass. 2019), aff'd, 964 F.3d 1365 (Fed. Cir. 2020), cert. denied sub nom. Ono Pharm. Co. v. Dana-Farber Cancer Inst., No. 20-1258, 2021 WL 2044661 (U.S. May 24, 2021). Dana-Farber and Pfizer claimed that scientists Dr. Gordon Freeman and Dr. Clive Wood were wrongfully omitted as named inventors on the Honjo-Freeman patents. The case was set for a bench trial on February 4, 2019.

On the morning of trial and without advance notice, Pfizer announced that it had settled with Defendants and would not be producing witnesses or evidence. Significantly, the omitted

inventor who was affiliated with Pfizer, Dr. Wood, did not appear as the first witness as scheduled. After a brief continuance, though, he did appear to testify. Dana-Farber proceeded alone at trial. The Pfizer licensing agreement was introduced in redacted form and sealed. Feb. 4, 2019 Tr. At 58:12-60;12, <u>Dana-Farber Cancer Institute Inc. v. Ono Pharma. Co. et al.</u>, No. 15-cv-13443-PBS, Dkt. 359 (D. Mass. Mar. 1, 2019). The court ruled in favor of Dana-Farber and was upheld on appeal. The Supreme Court denied certiorari.

    The instant suit constitutes Round Two of this saga. Plaintiff now alleges that Defendants have engaged in unfair methods of compensation, unfair trade practices in violation of Mass. Gen. Laws ch. 93A, and tortious interference with business relationships. Plaintiff also asserts a claim of unjust enrichment. Plaintiff specifies that three provisions of the Merck and Pfizer licenses violate its rights: (1) the restrictive covenants preventing Merck and Pfizer from licensing the Honjo-Freeman patents from Plaintiff at any time in the future even if their license has terminated, (2) Merck's and Pfizer's agreement not to cooperate in litigation challenging Defendants' inventorship rights, and (3) Defendants' promise to pay Pfizer "a bonus" (Dana-Farber's description) if Defendants were to prevail in the inventorship litigation against Dana-Farber.

**LEGAL STANDARD**

There is a longstanding tradition of public access to trials and pre-trial motions in our judicial system, a tradition that is protected both by the common law and the First Amendment. See, e.g., Nixon v. Warner Comm'ns, 435 U.S. 589, 597 (1978); FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 n.4 (1st Cir. 1987) (common law); Lugosch v. Pyramid Co. of Onandaga, 435 F.3d 110, 120 (2d Cir. 2006) (common law and First Amendment). The presumption of public access applies to documents produced in discovery and filed with the court. Standard Fin. Mgmt. Corp., 830 F.2d at 409. The threshold showing for impoundment of documents is elevated when the litigation involves "matters of significant public concern." Id. at 412.

"A party seeking to file a document under seal must demonstrate that 'good cause' exists to do so." Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc., No. CIV.A. 07-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) (citing Fed. R. Civ. P. 26(c)). The more important the information is to the adjudication of the matter, the higher the burden to overcome the presumption of openness. See Ferring Pharms., Inc. v. Braintree Labs, Inc., 215 F. Supp. 3d 114, 127 (D. Mass 2016).

## DISCUSSION

Plaintiff alleges that the three provisions of the settlement and license agreements thwart the legitimate patent rights of co-inventors of valid patents which involve life-saving inventions in the field of cancer immunology. In their view, these restrictive provisions constitute a matter of significant public concern, thus elevating Defendants' burden.

Defendants broadly claim that the terms of the license agreements are confidential, and disclosure would be competitively harmful because they would be at a disadvantage in future negotiations. In some circumstances, Courts have held that public disclosure of settlement and documents disclosing confidential information such as royalty rates or license terms can harm the competitive standing of a patent holder. See Tech Props. Ltd. LLC v. Canon Inc., No. 14-3640, 2016 U.S. Dist. Lexis 189466, at *6 (N.D. Cal. Nov. 30, 2016). However, Defendants have not provided the Court with "a particular factual demonstration of potential harm" should the three provisions identified by Plaintiff be made public. See Standard Fin. Mgmt. Corp., 830 F.2d at 412. Defendants instead refer to the licenses as containing "confidential business information" which would give counterparties in future negotiations a "stark negotiating advantage." (Dkt. 128 ¶¶ 11, 12) Defendants also submit that unsealing these terms would undermine the strength of confidentiality clauses in future agreements and implicate

5

the privacy rights and business interests of third-parties Merck and Pfizer without their ability to be heard on the matter.

These concerns are overblown. The three provisions at issue here include the core dispute in the litigation between Defendants and Plaintiff. Indeed, the license agreement with Pfizer includes a payment <u>to</u> Pfizer, rather than a royalty rate paid <u>by</u> Pfizer. There is no evidence that the provisions at issue reveal confidential business information. The substance of the three disputed terms in the Pfizer case were disclosed in large part in open court. Moreover, as Dana-Farber points out, much of the information involving the Merck license was revealed in SEC filings, and press releases. When the importance of the issues at stake are balanced against the tenuous claim of confidentiality, I find these provisions should be unsealed for public scrutiny. Accordingly, these three provisions and any references thereto shall be unsealed.

## ORDER

For the foregoing reasons, Defendants' Motion to Seal (Dkt. 121) is **DENIED** with respect to the three provisions described in this memorandum. The Court orders the defendants to file a redacted version forthwith.

SO ORDERED.

/s/ PATTI B. SARIS  
Patti B. Saris  
United States District Judge